UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 05-50081-01 |
| versus | JUDGE HICKS |
| JOSEPH MADRIGAL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Defendant is charged in a two count indictment with possession of a firearm by a convicted felon and an armed career criminal (Count 1) and possession of stolen firearms (Count 2). Before the court are Defendant's **Motion to Suppress Evidence (Doc. 14)** and **Motion to Suppress Confession (Doc. 15)**. An Evidentiary Hearing was held on the motions on December 7, 2005. A transcript of the hearing was prepared at Defendant's request, and both parties have filed supplemental briefs in support of their positions. Docs. 33 & 34. For the reasons that follow, it is recommended that both Motions to Suppress be denied.

**Facts**

The following facts were established at the Evidentiary Hearing. Detective Marianna McClure of the Caddo Parish Sheriff's Department was investigating the May 20, 2004 burglary of a house in Shreveport, Louisiana. On May 21, 2004, the victim of the burglary contacted Det. McClure and informed her that the burglary suspect and the vehicle used in

the burglary were located at the Pelican Inn Motel in Shreveport. Tr. 27. The victim told Det. McClure that, from a vantage point across the street, he was observing the suspect going in and out of Room 161. Tr. 27.

Det. McClure called Det. Terry Richardson of the Caddo Parish Sheriff's Office and requested assistance. Tr. 5. Det. Richardson arrived at the motel first. Tr. 28. After making contact with the victim, Det. McClure also went to the motel. Tr. 28. The vehicle identified by the victim was parked in front of Room 161.

Det. McClure and Det. Richardson went to Room 161 and knocked on the door. Tr. 28. A pit bull dog came to the window of Room 161 and barked in a very aggressive manner. Tr. 28. A woman in the room (later identified as Timme Milliron) responded to the knocks on the door. Tr. 30. Det. McClure asked Ms. Milliron to secure the dog so it would not be harmed. Ms. Milliron did so and then came back to the door and allowed two Shreveport Police officers, who also responded to the scene at the request of Det. McClure, to enter the room. Tr. 29. The two officers entered the room, verified that Defendant was not hiding in the bathroom, and then exited the room. Tr. 29. While the door to Room 161 was open, Det. McClure saw several items that matched the victim's description of items that were stolen in the burglary. Tr. 29-30.

While Det. McClure and the two Shreveport Police Department officers were making contact with Ms. Milliron at the door to Room 161, Det. Richardson was trying to locate Defendant. Upon arrival at the motel, Det. Richardson observed a white male who, when he

noticed Det. McClure, started running. Tr. 5. That individual met the description of Defendant. Tr. 7. Defendant successfully evaded capture by Det. Richardson until Defendant jumped off the second floor balcony onto the parking lot of the motel. Tr. 10. Det. Richardson and a Shreveport police officer then handcuffed Defendant. Det. Richardson informed Defendant of his rights under <u>Miranda</u>. Tr. 11. Pursuant to a search incident to the arrest of Defendant, a pill bottle containing crack cocaine was found in Defendant's pocket. Tr. 11.

Because Defendant jumped from the second floor balcony onto the parking lot, the Shreveport Fire Department was called to examine Defendant for injuries. The EMTs determined that Defendant should be transported to LSU Medical Center for further evaluation.

Det. McClure followed Defendant as he was being transported to LSUMC. In the LSUMC waiting area, Det. McClure again read Defendant his <u>Miranda</u> rights. However, Defendant refused to sign the <u>Miranda</u> rights form (Government's Exhibit 2), and he refused to make any statements regarding the burglary. Tr. 22. He did not, however, invoke his right to counsel.

Even though Defendant refused to make any statement regarding the burglary, a conversation did ensue between Defendant and Det. McClure in the waiting area. Det. McClure described the conversation as follows:

> "While we were sitting there waiting for a doctor to come in to check him out and whatever, he and I were talking about Ms. Milliron, who was evidently his

girlfriend. And I told him that I had had her grandmother come and pick the dog up to keep the dog from being harmed or left in the room. And when he realized that Ms. Milliron was also in trouble for being with him at that time, he told me that he wanted to go back to the room, there wasn't anything wrong with him, and I would take him back to the room, he would sign a release, whatever he needed to do. So that's what we did."

Tr. 33. Det. McClure testified that although Defendant had been made aware of his rights by her at LSUMC, and even though Defendant initially had refused to make a statement, he kept asking her questions about what was happening with Ms. Milliron. Tr. 37. Det. McClure also told Defendant that Ms. Milliron was going to be arrested. Tr. 43. According to Det. McClure: "I was just having a conversation with him there since he didn't want to talk about the incident the day before and letting him know that the dog had been taken care of." Tr. 43.

Det. McClure did not know if she told Defendant about the dog and girlfriend before Defendant refused to give a statement at LSUMC or after he refused. Tr. 46. Det. McClure also did not remember who initiated the conversation about what was going to happen to the dog. According to Det. McClure: "He had calmed down and was talking, you know, just carrying on conversation. He was, like I said, he wasn't as agitated as he had been. And the puppy was important to her; I felt like it was important to him, and that's why I mentioned it, you know, that the dog was being taken care of." Tr. 52.

When Defendant returned to the motel with Det. McClure, he signed the Consent to Search form for Room 161. Government Exhibit 1; Tr. 34. The form advised Defendant, among other things, that he had an absolute right to refuse to consent to a search. Det.

McClure estimated that it was approximately an hour between the time Defendant was released from the hospital and his return to the motel where the consent form was executed. Tr. 36.

Upon his return to the motel, Defendant also spoke with Sgt. Owen McDonnell, head of Crime Scene Investigations for the Caddo Parish Sheriff's Office. Sgt. McDonnell was looking around Room 161 trying to determine what might belong to the victim of the burglary. Tr. 55. He asked Defendant if he had been read his rights. Defendant said "yes." Tr. 55. Sgt. McDonnell then asked Defendant if he would mind answering a few questions about the stuff in the room and about the burglary. Tr. 56. Sgt. McDonnell testified that Defendant stated, "Naah, I don't mind." Tr. 56. Sgt. McDonnell and Defendant then started going through the items that Defendant identified as having been taken in the burglary. Tr. 56. Sgt. McDonnell made a list of items on the property receipt so that the items could be returned to the victim. Defendant agreed to sign the forms acknowledging that the items were recovered from him. Tr. 57. Sgt. McDonnell did not force, threaten or coerce Defendant in any way in order to obtain his cooperation. Tr. 57.

**Analysis**

Defendant's Motions to Suppress (Docs. 14 & 15) seek suppression of the evidence obtained in the searches made of Defendant's person and of Room 161 of the motel. Defendant also seeks to suppress all statements made by Defendant to the officers on the basis that these statements allegedly were not freely and voluntarily made.

Under Miranda, a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, the right to remain silent, and that anything that the person says may be used against him. 384 U.S. at 444-445 (1966). A person may waive these rights, so long as the waiver is knowing and voluntary. Moran v. Burbine, 475 U.S. 412, 421 (1986).

The police must scrupulously honor a person's unambiguous invocation of his rights. Miranda, 384 U.S. at 473-474. However, ambiguous assertions of the right to counsel and the right to silence are not sufficient to trigger the cessation of police questioning. Under Davis v. United States, 512 U.S. 452, 458-459 (1994), the test is whether a reasonable police officer would understand the request to be an invocation of a constitutionally guaranteed right under the circumstances in which the request is made. Id.

In Charles v. Smith, 894 F.2d 718 (5th Cir. 1990), the Fifth Circuit differentiated between a suspect's request for counsel and when a suspect indicates a desire to remain silent. Once a person in custody advises the police during interrogation that he desires counsel, that person may not be questioned further until counsel has been made available to him, unless the accused himself initiates further communications, exchanges or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 485 (1981); Arizona v. Roberson, 486 U.S. 675 (1988). A different rule applies, however, when the person in custody simply asserts his right to remain silent. Relying on Michigan v. Mosely, 423 U.S. 96 (1975), the Fifth Circuit explained:

> When a suspect does not request counsel, but only halts police interrogation by asserting the right to remain silent, if an inculpatory statement is elicited in a later questioning, the court must examine the record in each case to determine whether the police "scrupulously honored" the detainee's right to cut off questioning. This case-by-case treatment can produce opposite results in cases that are similar in some respects.

894 F.2d at 725-726. In Hebert v. Cain, 121 Fed. Appx. 43, 46 (5th Cir. 2005), the Fifth Circuit identified four factors to consider in determining whether the police scrupulously honored the suspect's rights: (1) whether police immediately ceased initial interrogation upon the suspect's request; (2) whether questioning was resumed after a significant period of time; (3) whether a fresh set of warnings was provided; and (4) whether the topic of the second interrogation was a different crime. No single factor is dispositive. Id.

In his supplemental memorandum (Doc. 33), Defendant argues that Det. McClure initiated the conversation with Defendant at LSUMC about Defendant's girlfriend and the dog. Supplemental Brief, p. 2. According to Defendant, Det. McClure took advantage of Defendant's disposition to entice Defendant to make an incriminating statement. Supplemental Brief, pp. 3-4. However, the facts established at the evidentiary hearing do not bear out Defendant's contentions. The evidence shows that Det. McClure honored Defendant's request to remain silent, but it was Defendant who, after he had calmed down, insisted on talking about his girlfriend (Tr. 37), which led to a discussion about who was going to take care of the dog. There is no evidence that, after Defendant invoked his right to remain silent, Det. McClure initiated any conversation about the burglary or Defendant's involvement in the burglary. At LSUMC, Defendant did not make any statement implicating

himself in the burglary. In fact, the incriminating statements did not occur until Defendant returned to the motel and Sgt. McDonnell asked him if he had been advised of his rights, whether he understood his rights and whether he minded answering a few questions about the burglary and the items in the room. At that point, Defendant already had been advised of his Miranda rights twice: first by Det. Richardson when Defendant was handcuffed in the motel parking lot and again by Det. McClure in the LSUMC waiting room. Sgt. McDonnell then gave Defendant yet another opportunity to assert his Miranda rights and refuse to answer any questions. Instead, Defendant voluntarily waived his rights and made the incriminating statements that are at issue in this case. Based on an evaluation of the relevant factors, Defendant's right to cut off questioning was "scrupulously honored," and his statements were made freely and voluntarily.

**Conclusion**

The search of Defendant's person, which led to the discovery of the pill bottle containing crack cocaine, was a valid search incident to Defendant's arrest. The search of the motel room was a valid search without a warrant because Defendant freely and voluntarily consented to the search of his room. The incriminating statements made by Defendant were made by Defendant following multiple readings of Defendant's Miranda rights and his free and voluntary waiver of those rights. Therefore, there is no basis upon which to suppress the evidence in this case.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress Evidence (Doc. 14)** and Defendant's **Motion to Suppress Confession (Doc. 15)** be **DENIED**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 8th day of February, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE